IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DALE RODANO,** | **CASE NO. 1:18-CV-02770** |
| Petitioner, | **JUDGE PAMELA A. BARKER** |
| -vs- | **MAGISTRATE JUDGE THOMAS M. PARKER** |
| **WARDEN DAVID MARQUIS,** | |
| Respondent. | **MEMORANDUM OF OPINION AND ORDER** |

This matter is before the Court upon the Report & Recommendation ("R&R") of Magistrate Judge Thomas M. Parker (Doc. No. 23), which recommends denying the Petition for Writ of Habeas Corpus (Doc. No. 1) of Petitioner Dale Rodano ("Rodano"). Rodano has filed Objections to the R&R. (Doc. No. 25.) For the following reasons, Rodano's Objections (Doc. No. 25) are OVERRULED, the Magistrate Judge's Report & Recommendation (Doc. No. 23) is ADOPTED, and the Petition (Doc. No. 1) is DENIED.

I. **Background**

   a. **Factual Background**

The Court of Appeals for the Eighth District of Ohio summarized the facts underlying Rodano's state court conviction as follows:

> {¶ 2} On November 7, 2013, five weeks after Rodano obtained insurance on his house in Parma, Ohio from Allstate Insurance, a fire erupted in the house around 2:00 p.m. Twenty-three firefighters in Parma's fire department responded to the fire.
>
> {¶ 3} Rodano claimed the fire started when one of his pets knocked over a candle on a living room table while he was asleep in a chair in the living room. However, Agent Joanna Lambert of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) issued a report that opined that the fire was incendiary; State Fire Marshall Jeffrey Koehn investigated the fire and reached the same conclusion.

{¶ 4} On October 28, 2014, the grand jury indicted Rodano of four counts of aggravated arson and one count of insurance fraud.

{¶ 5} The trial was initially scheduled for June 1, 2015. On the day of trial, Rodano's appointed counsel moved to withdraw because Rodano was unhappy with counsel's performance. The trial was continued to January 19, 2016. While preparing for the trial, Agent Lambert reviewed her report and, upon further review, she changed the conclusion of her report from "incendiary" to "undetermined" and issued a second report concluding the cause of the fire was "undetermined." Fire Marshall Jeffrey Koehn, however, did not change his report and did not testify at trial.

{¶ 6} At the week-long trial, the state presented testimony from Rodano's acquaintance Lawrence Scott Allen, his girlfriend at the time Tracy Correll, his brother David Rodano, his neighbor Scott Thom, whose house sustained damage in the fire, four firefighters, two Allstate employees, and Agent Joanna Lambert. Rodano presented three witnesses to testify on his behalf.

**Trial Testimony**

{¶ 7} Lawrence Scott Allen, an acquaintance of Rodano, testified that he told Jeffrey Koehn, the state fire marshall [sic] in charge of the investigation of this case, about a conversation he had with Rodano in the summer of 2012. In the conversation Rodano entertained the idea of torching his house to collect on the insurance. Rodano specifically mentioned a scenario where "a Christmas tree could conveniently fall over and knock a candle over." Scott Allen later did some plumbing work on Rodano's house. After the fire, he received a call from Rodano. Rodano told him the fire started when he was asleep and one of the pets knocked over a candle and the couch caught on fire. On cross examination, Allen admitted there was tension between the two after he asked Rodano to file an insurance claim for an injury Allen sustained in Rodano's home but Rodano refused.

{¶ 8} Tracy Correll lived in Rodano's Parma house for almost seven years. She moved out in the first week of October 2013 because of Rodano's problems with alcohol. She testified that they had candles in the house, but they were mostly for decoration and lit only at Christmas. She recalled Rodano talked about fire, remarking that "people light their stuff on fire all the time, Tracy. You know, they can't [really] prove nothing if you don't use an accelerant * * *." Before she moved out in October of 2013, she asked to take her personal belongings, to which Rodano responded, "Bitch, I'll burn your shit down before I give it back to you."

{¶ 9} Dale Rodano's brother, David Rodano, testified that in September or October of 2013, his brother Dale told him that "he's going to be rich" and that "he was going to set his house on fire and that he was going to tell anybody that asked that the cat and

2

the dog were running around the house and knocked a candle over and that's what caused the fire." When David Rodano commented that the excuse sounded "phoney," his brother responded that "it doesn't really matter because you're innocent until proven guilty" and "nobody would be able to prove that he burned his house down." David Rodano described his brother as drunk and angry at the time he made these statements. Two weeks after the fire, Dale Rodano told his brother "not only that he was going to get money from it, but that he had raised the payout on his insurance company." As David Rodano testified, "[Dale] was laughing about it because * * * it was like he tricked the insurance man," and he felt that he "was going to get away with this because the report that the fire marshal[l] [sic] made said that the fire originated on the front porch, and [Dale] says that he knew for a fact that that was incorrect and that the fire started in his living room." David Rodano testified that his brother did not tell him how the fire started but only that "he was going to tell people that the cat and the dog were running around and knocked a candle over and that's what caused the fire."

{¶ 10} Four firefighters of Parma's fire department testified regarding their response to the fire and the scope, intensity, duration, and spread of the fire. The state's exhibits included photographs of the house in flames and the extensive damages to the house.

{¶ 11} Although Counts 2 and 3 of the indictment alleged victims Scott Thom and Norman Thom, only the former testified. Scott Thom was Rodano's next-door neighbor. He testified that around the time of the fire, he was recovering from back surgery. Sometime in the afternoon on the day of the fire, Rodano pounded on Thom's door. By the time he answered the door, Rodano had already gone to another neighbor, Len Ziegler, who lived two doors down from Rodano's house. Thom saw Rodano on his knee in the yard, yelling for people to call 911. The fire department responded within minutes. Thom's house sustained damage from the fire—its vinyl siding melted from the intense heat.

{¶ 12} Two Allstate Insurance employees also testified. Their testimony indicated that Rodano obtained a homeowner policy for his residence on October 2, 2013. Initially, Tracy Correll was on the policy as well. After she moved out, Rodano made frequent phone calls to the insurance company to ensure that she was removed from the insurance policy. She was removed on October 25, 2013. After the fire, Rodano frequently expressed his frustration about the slow process of being paid on his policy. In addition to the value of the home, he claimed over $77,000 in personal property damaged by the fire.

{¶ 13} Agent Joanna Lambert of the ATF conducted an investigation on the cause of the fire. She testified that she initially concluded that a couch on the porch was the origin of the fire and the fire was incendiary, after she eliminated all other reasonable sources of ignition. As she prepared for the trial and reviewed her initial report, however, she began to have concerns about the origin of the fire due to the extent of

3

damage sustained by the couch in the living room. When she further analyzed the data collected from the scene, she placed the origin of the fire in a living room couch, which was by the window looking out to the porch. Agent Lambert's further research and analysis focused on a candle on a living room table.

{¶ 14} From this further investigation, Agent Lambert issued a second report. She opined that there was a viable ignition source in the living room. However, she did not know where the candle was located and how and where it had ended up, because the fire department personnel could not recall whether the glass base of the candle was recovered from inside the footprint of the couch or outside. She could not conclusively eliminate the cause of fire as an accident. However, she was unable to eliminate the fire as incendiary either. As a result, she ruled the cause of the fire as undetermined.

{¶ 15} The state solicited testimony from Agent Lambert regarding the rarity of a fire caused by a candle being knocked over. Her research indicated that out of the approximately 10,000 fires per year caused by candles, only two percent could be attributable to a candle being knocked over. Lambert did acknowledge that there were documented fire incidents caused by pets knocking over candles.

{¶ 16} The defense called four witnesses. Leonard Ziegler testified he lived two doors down from Rodano's house. Rodano told him the fire started while he was asleep in the living room when one of his pets knocked a candle off a table onto an adjacent couch. Ziegler remembered having seen a dog in Rodano's yard on a prior occasion. Emily Henceroth, whose family were the prior owners of the home that was the subject house, testified that she sold the house in 1999 to Rodano. Rodano made several improvements to the house between 2010 and 2013. The third defense witness was Matthew Slotka, Vice President of Ohio Fire Claims, a public adjusting company hired by Rodano to represent him in submitting claims to Allstate. He testified that he conducted an inventory of proof of loss but Allstate denied his claim.

{¶ 17} The defense's arson expert, John Agosti, presented his finding that the candle in the living room was the source of the fire and its flame ignited the couch. Agosti testified that the fire department's removal of the candle from the spot it was originally found made it impossible for him to determine whether the fire was intentionally or accidentally started. He also concluded that the cause of the fire was "undetermined."

{¶ 18} The defense moved for Crim.R. 29 dismissal after the state presented its case in chief and again after the defense presented its evidence. The trial court denied the motions. The state dismissed Count 4, which related to a purported victim Norman Thom. After deliberation, the jury found Rodano guilty of the remaining four counts: three counts of aggravated arson and one count of insurance fraud. The trial court sentenced him to 6 years in prison on each aggravated arson count and 36 months on the insurance fraud, to be served concurrently. The court also imposed postrelease control and advised Rodano of his duties to register as an arson offender.

*State v. Rodano*, 86 N.E.3d 1032, 1034-37 (Ohio Ct. App. 8th Dist. 2017).

### b. Procedural History

#### i. State Trial Court Proceedings

On October 28, 2014, a Cuyahoga County, Ohio grand jury returned an indictment charging Rodano with two counts of aggravated arson in violation of Ohio Rev. Code § 2909.02(A)(2), two counts of aggravated arson in violation of Ohio Rev. Code § 2902.02(A)(1), and one count of insurance fraud in violation of Ohio Rev. Code § 2913.47(B)(1). *State v. Rodano*, Cuyahoga County Court of Common Pleas, Case No. CR-14-590106 (indictment). Rodano pled not guilty. (Doc. No. 10-1 at 95.)

On May 28, 2015, through his first trial attorney, Rodano moved to dismiss the indictment. (*Id.* at 5-7.) Based on the revised report of ATF Agent Joanna Lambert ("Lambert")—which concluded that the cause of the fire was undetermined rather than incendiary (i.e., intentional) as she had opined in her original report—Rodano argued that the State would not be able to establish the elements of arson beyond a reasonable doubt. (*Id.*) Shortly thereafter, on June 1, 2015, Rodano's attorney withdrew from representing him, and the trial court appointed new counsel. (*Id.* at 91.) Rodano's new counsel did not renew or otherwise further pursue the motion to dismiss, and the trial court did not journalize any ruling on the motion. *State v. Rodano*, No. 104176, 2017 WL 4711460, at *2 n.2 (Ohio Ct. App. 8th Dist. Oct. 17, 2017).

The case later proceeded to trial, after which the jury returned a verdict of guilty on two counts of aggravated arson in violation of Ohio Rev. Code § 2909.02(A)(2), one count of aggravated arson in violation of Ohio Rev. Code § 2909.02(A)(1), and one count of insurance fraud in violation of Ohio Rev. Code § 2913.47(B)(1). (Doc. No. 10-1 at 52.) On February 23, 2016, the trial court

sentenced Rodano to serve concurrent six-year prison terms on each of the three aggravated arson convictions. (*Id.* at 80.) The trial court also sentenced Rodano to serve a thirty-six-month prison term for the insurance fraud conviction, to be served concurrently with the aggravated arson prison terms. (*Id.*)

### ii. Direct Appeal

Rodano appealed his convictions to the Ohio court of appeals. (*Id.* at 96-134.) On August 19, 2016, through new counsel, Rodano raised three assignments of error:

1. The prosecution erred in proceeding on the October 23, 2013 indictment because it was issued in violation of Rodano's Fifth Amendment right to be indicted by an independent and unbiased grand jury and because that violation prejudiced Appellant.

2. The evidence is insufficient to support Appellant's conviction of aggravated arson in Count 1.

3. The evidence is insufficient to support convictions of aggravated arson in Counts 2 and 3.

(*Id.* at 101.) The state filed a brief in response. (*Id.* at 135-52.) On March 23, 2017, the court of appeals rejected Rodano's assignments of error and affirmed the trial court's judgment. *Rodano*, 86 N.E.3d at 1037-41. Rodano did not appeal to the Ohio Supreme Court.

### iii. Application to Reopen

On May 3, 2017, Rodano filed a *pro se* application to reopen his direct appeal pursuant to Ohio App. R. 26(B) alleging that he had received ineffective assistance of appellate counsel. (Doc. No. 10-1 at 166-76.) Specifically, Rodano asserted that his appellate counsel on his direct appeal was ineffective for two reasons:

1. Rodano was denied effective assistance of counsel on appeal when appellate counsel failed to raise trial counsel's failure to move to dismiss the indictment after

> learning it was obtained through materially false evidence in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.
>
> 2. Rodano was denied effective assistance of appellate counsel when counsel failed to raise a violation of the Confrontation Clause that was clear on the face of the record, in violation of the Sixth, and Fourteenth Amendments to the United States Constitution.

(*Id.* at 168, 173.) The state filed a memorandum in opposition, and Rodano filed a reply. (*Id.* at 177-91.) On October 17, 2017, the Ohio court of appeals denied Rodano's application to reopen. *Rodano*, 2017 WL 4711460, at *2-3.

On November 16, 2017, Rodano filed a *pro se* notice of appeal in the Ohio Supreme Court. (Doc. No. 10-1 at 202-04.) His memorandum in support of jurisdiction set forth two propositions of law:

> 1. When appellate counsel failed to raise trial counsel's failure to move to dismiss the indictment after trial counsel learned the indictment was obtained through different facts then [sic] those introduced to the grand jury, the conviction was obtained in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.
>
> 2. When appellate counsel failes [sic] to raise a violation of the Confrontation Clause that is clear on the face of the record, in violation of the Sixth and Fourteenth Amendments to the United States Constitution Rodano was denied effective assistance of appellate counsel.

(*Id.* at 205-16.) On February 14, 2018, the Ohio Supreme Court declined jurisdiction and dismissed the case pursuant to Ohio S. Ct. Prac. R. 7.08(B)(4). (*Id.* at 227.)

### iv. Motion for New Trial

On August 6, 2018, Rodano filed a *pro se* motion for a new trial pursuant to Ohio R. Crim. P. 33(A) and a motion for leave to file a delayed motion for a new trial pursuant to Ohio R. Crim. P. 33(B). (*Id.* at 229-59.) Rodano asserted two grounds in support of his request for a new trial:

1. Rodano was denied his Sixth Amendment right to maintain his innocence as outlined in *McCoy v. Louisiana*, 138 S. Ct. 1500, 200 L. Ed. 2d 821.

2. Rodano was denied his Sixth Amendment right to testify on his own behalf as outlined in *McCoy v. Louisiana*, 138 S. Ct. 1500, 200 L. Ed. 2d 821.

(*Id.* at 235, 239.)  On October 22, 2018, the trial court denied Rodano's motion for leave to file a delayed motion for a new trial because he had not shown by clear and convincing evidence that he was unavoidably prevented from discovering any new evidence.  (*Id.* at 260.)  The trial court also denied his motion for a new trial as moot.  (*Id.*)

On November 7, 2018, Rodano filed a notice of appeal of the trial court's decision to the Ohio court of appeals.  (*Id.* at 261.)  His brief asserted three assignments of error:

1. Rodano was denied his Fifth, Sixth and Fourteenth Amendment rights when the trial court abused its discretion by denying him leave to file a delayed motion for new trial without a hearing.

2. Rodano was denied his Sixth Amendment right to maintain his innocence as outlined in McCoy v. Louisiana, 138 S. Ct. 1500.

3. Rodano was denied his Sixth Amendment right to testify on his own behalf as outline[d] in McCoy v. Louisiana, 138 S. Ct. 1500.

(*Id.* at 270-83.)  The state filed a responsive brief, and Rodano filed a reply.  (*Id.* at 284-305.)  On May 30, 2019, the Ohio court of appeals affirmed the decision of the trial court.  *State v. Rodano*, No. 107880, 2019 WL 2317172 (Ohio Ct. App. 8th Dist. May 30, 2019).  Rodano did not appeal to the Ohio Supreme Court, but he asserts that he never received the journal entry from the Ohio court of appeals required to file his appeal.  (Doc. No. 22 at 11-12.)

### v. Federal Habeas Petition

On November 27, 2018, Rodano filed a *pro se* Petition for Writ of Habeas Corpus in this Court, raising three grounds for relief:

8

> **GROUND ONE:** Rodano was denied his Sixth Amendment right to the effective assistance of appellate counsel when counsel failed to raise a clear claim of trial counsel error that appeared on the face of the record.
>
> **GROUND TWO:** Rodano was denied the effective assistance of appellate counsel when counsel failed to raise a violation of the Confrontation Clause that was clear on the face of the record, in violation of the Sixth, and Fourteenth Amendments to the United States Constitution and Fourteenth Amendment rights.
>
> **GROUND THREE:** Rodano was denied his Sixth Amendment right to maintain his innocence and testify on his own behalf as outlined in McCoy v. Louisiana, 138 S Ct. 1500, 200 L.Ed.2d 821.

(Doc. No. 1 at 19-27.)

On March 2, 2020, the Court denied Rodano's Motion to Stay and Respondent's Motion to Dismiss. (Doc. No. 14.) Shortly thereafter, Rodano filed a supplement to his Petition setting forth arguments as to why Ground Three of his Petition was not procedurally defaulted. (Doc. No. 17.) Respondent filed an Answer/Return of Writ on April 15, 2020, and Rodano filed a Reply to Respondent's Answer/Return of Writ on July 7, 2020. (Doc. Nos. 18, 22.)

On September 24, 2020, the Magistrate Judge issued an R&R recommending that the Petition be denied. (Doc. No. 23.) The Magistrate Judge concluded that all of Rodano's claims either lacked merit and/or were procedurally defaulted. (*Id.*) After receiving an extension of time, Rodano filed Objections to the R&R on October 22, 2020. (Doc. No. 25.) In his Objections, Rodano objects to the Magistrate Judge's recommended holdings only with respect to Grounds One and Two of his Petition. (*See id.*)

## II. Standard of Review

Parties must file any objections to a report and recommendation within fourteen days of service. Fed. R. Civ. P. 72(b)(2). Failure to object within this time waives a party's right to appeal

9

the district court's judgment. *See Thomas v. Arn*, 474 U.S. 140, 145 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).

When a petitioner objects to a magistrate judge's resolution of a dispositive matter, the district court reviews those objections *de novo*. Fed. R. Civ. P. 72(b)(3). Specifically, a district judge:

> must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.* "A party who files objections to a magistrate [judge]'s report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately.'" *Jones v. Moore*, No. 3:04CV7584, 2006 WL 903199, at *7 (N.D. Ohio Apr. 7, 2006) (quoting *Walters*, 638 F.2d at 949-50). An objection "that merely restates the arguments previously presented" or "does nothing more than state a disagreement with a magistrate's recommendation" is not sufficient. *Id.*

When a party fails to raise a specific objection to a finding of a magistrate judge on a dispositive matter, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b)(3), Advisory Committee Notes; *see also Thomas*, 474 U.S. at 150 (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings").

### III. Analysis

#### a. Ground One

In Ground One of his Petition, Rodano claims that his appellate counsel on direct appeal was ineffective for failing to argue that his trial counsel was ineffective for not moving to dismiss the indictment. (Doc. No. 1 at 19-20; Doc. No. 8-1.) Specifically, Rodano argues that he was indicted based on Lambert's initial report that concluded the fire had been intentional and that the indictment should have been dismissed once Lambert revised her opinion to conclude that the cause of the fire was undetermined. (*Id.*) Although Rodano's first trial attorney moved to dismiss the indictment on that basis, his second trial attorney did not pursue the motion, which Rodano asserts his appellate counsel should have raised as an issue on appeal. (*Id.*) The Magistrate Judge concluded that the Ohio court of appeals had not erred in denying Rodano's claim of ineffective appellate counsel on this basis because the underlying argument to dismiss the indictment was meritless and appellate counsel did in fact challenge the propriety of the indictment, just under a slightly different framework. (Doc. No. 23 at 17-19.) In his Objections, Rodano asserts that the Magistrate Judge did not fully address his argument and that there is a reasonable probability that the indictment would have been dismissed had his trial counsel pursued the motion to dismiss, which supports his ineffective assistance of appellate counsel claim. (Doc. No. 25 at 3-7.) Upon review, the Court agrees with the conclusions of the Magistrate Judge.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and

quotations omitted). Pursuant to AEDPA, habeas corpus relief is unavailable with respect to any claim adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[F]or a state court's decision to be 'contrary to' clearly established Supreme Court precedent, it must 'arrive[ ] at a conclusion opposite to that reached by [the Supreme Court] on a question of law[,]' or it must face a set of 'facts that are materially indistinguishable from a relevant Supreme Court precedent and' still arrive at an opposite result." *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

This is distinct from an "unreasonable application of" Supreme Court precedent, which occurs "when the state court correctly identifies the governing legal principle in the case, yet it unreasonably applies that principle to the facts of the defendant's case." *Id.* Under this standard, federal courts may not overturn a state court's decision simply because they believe that the state court applied Supreme Court precedent incorrectly. *Id.* "Instead, the state court's application of Supreme Court precedent must also be objectively unreasonable." *Id.* This means "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

As noted above, applying this highly deferential standard of review, the Magistrate Judge concluded that the Ohio court of appeals had not misapplied any clearly established federal law in its denial of Rodano's ineffective assistance of appellate counsel claim. (Doc. No. 23 at 21.) Generally, in order to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair. *Id*. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The Supreme Court has held a defendant is entitled to effective assistance of counsel in his first appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Thus, the two-part test

enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel. *Smith v. Robbins,* 528 U.S. 259, 285 (2000). An appellant has no constitutional right, however, to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel, *Perry*, 908 F.2d at 59. "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (citations omitted).

Importantly, "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted); *see Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).

Rodano raised the same argument set forth in Ground One regarding the ineffectiveness of his appellate counsel before the Ohio court of appeals, which rejected Rodano's claim, reasoning:

> {¶ 9} Rodano's first argument is that he was indicted on materially false evidence, that the fire was incendiary. He argues that when the ATF agent revised her report to conclude that the origin was undetermined, the foundation of the indictment was so undermined that it was no longer reliable and should have been dismissed.
>
> {¶ 10} Rodano's appellate counsel did raise the issue, but raised it through the lens of Rodano's right to be indicted by an independent and unbiased grand jury. The gravamen of appellate counsel's argument was that the
>
>> grand jurors were most certainly predisposed to indict after hearing that the state founded its case on the expert opinion of the ATF Agent Lambert that the cause of the * * * fire was "incendiary" * * *. Thus, it is clear that the improper information "substantially influenced the * * * grand jury's decision to indict." *Bank of Nova Scotia*, 487 U.S. at 256. [487 U.S. 250, 108 S.Ct. 2269, 101 L.Ed.2d 228 (1988)] * * * Allowing the indictment to stand under these circumstances mocks the entire grand jury process and would render the Fifth Amendment's Grand Jury clause a nullity. Accordingly, the Court should find that Appellant's convictions must be vacated and the * * * indictment dismissed without prejudice.

14

Appellant's br. 24–25.

{¶ 11} Rodano now argues that his appellate counsel bungled the argument by narrowing its focus too much. He should have argued it through the lens of ineffective assistance of trial counsel for not pursuing a motion to dismiss. Appellate counsel's particular argument, Rodano implies, allowed this court to skirt around the issue, employ plain error analysis, and deny the assignment of error.

{¶ 12} However, that is not what the court ruled. The court acknowledged that the grand jury did not have, could not have had, the benefit of the ATF agent's revised report. Nevertheless,

> the prosecution's evidence was tested at trial, not in the grand jury proceeding. * * * At trial, Agent Lambert testified at great length before the jury regarding her change of opinion regarding the cause of the fire from "incendiary" to "undetermined." Based on the record before us, we do not find the grand jury proceeding in this case fundamentally unfair resulting in prejudice to the defendant. There is no reversible error, plain or otherwise, regarding the grand jury proceeding.

*Rodano*, 8th Dist. Cuyahoga No. 104176, 2017–Ohio–1034, at ¶ 28.

{¶ 13} Thus, Rodano has not established prejudice. The court examined the irregularity and determined there was no error. Reframing the issue would not have made a difference. Moreover, this court will follow the Supreme Court's admonition and not second-guess counsel's decisions in strategy and tactics.

*Rodano*, 2017 WL 4711460, at *2-3.

Rodano has not shown this decision was contrary to or an unreasonable application of *Strickland*. To wit, the Ohio court of appeals noted that Rodano's appellate counsel on direct appeal had in fact raised a challenge to the propriety of the indictment based on Lambert's revised report, that the court on direct appeal rejected that argument, and that reframing the issue in the manner suggested by Rodano would not have changed the outcome of his direct appeal. Thus, Rodano cannot show that he was prejudiced as a result of his appellate counsel's failure to raise a meritless argument. Further, given the high degree of deference to counsel's strategic decisions under *Strickland*, Rodano cannot show that his appellate counsel's decision to challenge the indictment in the manner that he

15

did was unreasonable, as the framing suggested by Rodano is not a clearly stronger argument. Accordingly, the Ohio court of appeal's decision not to second guess his appellate counsel's strategic choices on direct appeal was not an unreasonable application of *Strickland* or any other clearly established federal law. Thus, the Court agrees with the Magistrate Judge that Ground One of Rodano's Petition fails on the merits.

    b. **Ground Two**

In Ground Two of his Petition, Rodano asserts that his appellate counsel on direct appeal was ineffective for failing to "raise a violation of the Confrontation Clause that was clear on the face of the record." (Doc. No. 1 at 21.) Specifically, Rodano contends that the report of State Fire Marshal Jeffrey Koehn ("Koehn")—which concluded that the fire was intentional—was presented at trial through the testimony of Scott Allen ("Allen"), but that Koehn himself never testified and Rodano therefore had no opportunity to cross-examine or confront Koehn. (*Id.* at 21-23.) In his R&R, the Magistrate Judge determined that no Confrontation Clause violation occurred, as neither Koehn's report nor any other out-of-court statements by him were offered in evidence. (Doc. No. 23 at 20-21.) Accordingly, the Magistrate Judge concluded that Rodano's appellate counsel was not ineffective for failing to raise a meritless argument and that Rodano suffered no prejudice from his appellate counsel's failure to raise the argument. (*Id.*) Rodano does not dispute that Koehn's statements and report were not introduced as evidence at trial. Instead, in his Objections, Rodano speculates as to whether the jury was somehow still aware of Koehn's report. (Doc. No. 25 at 8.) Rodano also points out that the Ohio court of appeals noted in its opinion on his direct appeal that Koehn did not change his report, and Rodano questions how the appellate court could have known this if the report was not made part of the record at trial and whether this knowledge influenced the

16

opinion of the appellate court. (*Id.*) The Court finds no merit to Rodano's objections with respect to Ground Two.

The Confrontation Clause of the Sixth Amendment "guarantees a criminal defendant the right 'to be confronted with the witnesses against him.'" *United States v. Johnson*, 581 F.3d 320, 324 (6th Cir. 2009) (quoting U.S. Const. amend. VI). Generally, "[t]his clause prohibits the government from introducing some out-of-court statements by individuals who do not testify at trial and whom the defendant has not had the opportunity to 'confront.'" *United States v. Miller*, 982 F.3d 412, 434 (6th Cir. 2020).

The Ohio court of appeals rejected Rodano's Confrontation Clause argument, finding that Koehn did not testify, that his report was not introduced into evidence, and, that, at most, a witness referenced Koehn when testifying as to what the witness told Koehn, not anything that Koehn said. *Rodano*, 2017 WL 4711460, at *3. The Magistrate Judge came to the same conclusion. (Doc. No. 23 at 20.) The Court agrees as well, as the trial transcript shows that Koehn's report was specifically excluded from being introduced and that neither Koehn's report nor any of his out-of-court statements were introduced at trial. (*See* Doc. No. 18-3 at 36-38; Doc. No. 18-4 at 20-42.) Thus, no Confrontation Clause violation occurred, and both the Magistrate Judge and the Ohio court of appeals correctly concluded that Rodano's appellate counsel was not ineffective for failing to raise a meritless argument.

Rodano's objections on the issue are either entirely unsupported or irrelevant to the issue of whether his constitutional rights were violated at trial or on appeal. First, Rodano speculates as to whether the jury was aware of Koehn's report and the fact that Koehn never changed the conclusion in his report that the fire at Rodano's house was intentionally set. (Doc. No. 25 at 8.) However,

17

Rodano does not provide any explanation as to how the jury could have been of aware of the report when it was never introduced in any manner at trial.  Second, Rodano questions how the Ohio court of appeals could have known that Koehn never changed his report when the report was not introduced into the record.  (*Id.*)  But the appellate court's knowledge of the report is irrelevant to any alleged violation that may have occurred at trial.  Moreover, the trial transcript includes a discussion of Rodano's motion *in limine* to exclude Koehn's report during which it is mentioned that the report was never changed.  (Doc. No. 18-3 at 36-38.)  Presumably, the Ohio court of appeals had access to this transcript.  Thus, the Court finds that Rodano's objections with respect to Ground Two are meritless, and the Court adopts the Magistrate Judge's recommendations regarding Ground Two.

    **c.  Ground Three**

In Ground Three of his Petition, Rodano claims that his Sixth Amendment rights to maintain his innocence and to testify on his own behalf were violated, relying on the Supreme Court's holding in *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018).  (Doc. No. 1 at 24-27.)  The Magistrate Judge concluded that Rodano's claims in this regard should be denied because they were procedurally defaulted and, alternatively, because they lacked merit.  (Doc. No. 23 at 21-34.)  Rodano does not object to any of the Magistrate Judge's findings with respect to Ground Three.  (*See* Doc. No. 25 at 8-9.)  Instead, Rodano states: "At pages 25 through 30 of his R&R, Magistrate Parker gave a thorough analysis of Rodano's attempted application of the Supreme Court's decision in McCoy.  After reviewing Magistrate Parker's McCoy analysis, and researching the case authorities cited therein, Rodano respectfully submits that no further arguments related to the McCoy decision will be forthcoming." (*Id.* at 9.)

Because Rodano has not objected to the Magistrate Judge's recommendations with respect to Ground Three, the Court need only satisfy itself that there was no clear error in order to accept the R&R.  Fed. R. 72(b)(3), Advisory Committee Notes; *see also Thomas*, 474 U.S. at 150.  The Court has reviewed the Magistrate Judge's findings with respect to Ground Three and finds no clear error.  Accordingly, the Court adopts the Magistrate Judge's conclusions that Ground Three is procedurally defaulted and meritless, as set forth in the R&R.

## IV.     Conclusion

For the reasons set forth above, Rodano's Objections (Doc. No. 25) are OVERRULED.  Accordingly, the Magistrate Judge's Report & Recommendation (Doc. No. 23) is ADOPTED, and the Petition (Doc. No. 1) is DENIED.  Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability.  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

Date:  June 7, 2021

   *s/Pamela A. Barker*  
PAMELA A. BARKER  
U. S. DISTRICT JUDGE